UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**Daniel Johnson,**

       **Plaintiff,**                     **Civil Action No.: 11-15487**

     vs.                         **District Judge Lawrence P. Zatkoff**

                                     **Magistrate Judge Mona K. Majzoub**

**Operation Get Down, Inc.**

       **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Daniel Johnson filed his original complaint pro se while a prisoner under 42 U.S.C. § 1983 against Defendant Operation Get Down, Inc. (OGD), alleging that while in the care and custody of Defendant, Plaintiff contracted Methicillin-Resistant Staphylococcus Aureus ("MRSA"), a severe skin infection. (Docket no. 1.) Plaintiff alleges that Defendant is responsible for the unsanitary conditions that caused Plaintiff's MRSA. Plaintiff seeks monetary damages for all of Plaintiff's medical bills relating to his condition, including all visits to the doctors, urgent care, hospitalization, and personal expenses. (Docket no. 1.)

Before the Court is Defendant's Motion for Summary Judgment. (Docket no. 35.) Plaintiff filed a Response. (Docket no. 36.) All pretrial matters have been referred to the undersigned for consideration. (Docket no. 9.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.     Recommendation**

For the reasons that follow, the undersigned recommends GRANTING Defendant's Motion for Summary Judgment [35]. Therefore, this matter should be dismissed in its entirety.

**II.    Report**

**A.     Procedural History**

On January 25, 2012, Plaintiff's case was partially dismissed by the Court because a portion of Plaintiff's claims were conclusory and amounted to nothing more than a billing dispute. (Docket no. 5.) The court did find, however, that Plaintiff had set forth sufficient factual allegations to support his claim against OGD that he was subjected to unsanitary conditions at OGD and that he acquired MRSA. (Docket no. 5.) Therefore, to the extent that Plaintiff's Complaint alleged an Eight Amendment claim, the Court concluded that his complaint was not subject to summary dismissal. (Docket no. 5.)

In November 2012, Plaintiff obtained legal counsel, and in March 2013, he filed a Motion to Amend his Complaint. (Docket no. 22.) On August 8, 2013, after some supplemental briefing, the Court granted Plaintiff's Motion in part and allowed Plaintiff to file an Amended Complaint to the extent that it only included claims against OGD for an Eighth Amendment violation. (*See* docket no. 31.) Plaintiff filed his First Amended Complaint on August 15, 2013. (Docket no. 32.)

**B.     Facts**

On December 8, 2009, after completing a seven-month sentence in Wayne County Jail, Plaintiff arrived at OGD as part of a Diversion Program. (Docket no. 32 ¶8; docket no. 35-1 at 8-9.) At his deposition, Plaintiff described the room that he was assigned:

2

> The floors were filthy, there was just the grim (sic) on the walls, the doors, the bed, everything. It was just filthy. I didn't even want to sit in the chair, it was sticky, everything else. It was pretty bad.

(Docket no. 35-1 at 9.) Plaintiff added that the headboard on the bed was dusty and that there was "pop [or] beer [or] something" that had been spilled all over the floor. (*Id.*) Plaintiff testified that he arrived in the room "sometime in the afternoon" on December 8 and that he gave a man down the hall from him some cash to go get him some rags and a gallon of bleach. (*Id.*) Plaintiff stated that he spent the rest of the afternoon and part of the evening (aside from a short break for dinner and a group meeting) cleaning his room. (*Id.*)

Plaintiff testified that he spent the day on December 9 going through orientation and on December 10 going to a clinic with one of the OGD staff members. (*Id.* at 10.) He further testified that December 11, 12, 13, and 14, were just days full of classes and meetings. (*Id.*) On December 15, however, Plaintiff said that it was a "[p]retty normal day" except he "started getting a lot of swelling in [his] foot." (*Id.*) Plaintiff stated that he met with a medical assistant who told him to meet with a doctor the next day. (*Id.*) Plaintiff testified that he met with the doctor on December 16 and that she told him that he should be "admitted to a hospital immediately." (*Id.* at 11.) Plaintiff went to Detroit Receiving Hospital that day, where his foot was "lanced . . . and bandaged." (*Id.*)

Plaintiff stated that he called OGD to get a ride back and found out that they did not have a ride for him that night and that they did not have supplies to take care of his foot. (*Id.*) So instead of going back to OGD that evening, he called his wife and went home. (*Id.*) The next day, Plaintiff called OGD to let them know what was going on, and he visited with his physician, who told Plaintiff that he should go back to the hospital if his foot did not get better within 24 hours. (*Id.* at 12.)

On the morning of December 18, Plaintiff woke up and his "foot was just on fire, it was swollen, [he] couldn't move it, [and he] couldn't put any weight on it." (*Id.* at 13.) Plaintiff went to Henry Ford Urgent Care where they lanced his foot again, took a culture, and had him immediately admitted to Henry Ford Wyandotte Hospital. (*Id.*) When he arrived at the hospital, he was prepped for "incision and drain" surgery; he stayed in the hospital until December 23. (*Id.*) Plaintiff was then medically discharged from the diversion program and began his probation sentence. (*Id.* at 14.) Plaintiff attempted to have OGD pay his medical bills, but when he was unable to do so, he filed his instant suit.

### B. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Rule also provides the consequences of failing to properly support or address a fact:

4

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

**C.  Analysis**

In general, Plaintiff's claims arise out of his allegation that his MRSA infection resulted from "the unsanitary living conditions presented at [OGD]." (Docket no. 32 at 2.) He alleges that OGD knew of the unsanitary conditions and that it "failed to keep the premises clean, failed to instruct the patients and it's personnel on the prevention of contagious diseases, and failed to provide supplies to the Plaintiff and other residents . . . , such as antibacterial soap." (*Id.* at 3-4.)

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th

5

Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). But "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."[1] *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Where a prisoner claims that his claims are based on conditions of confinement, the prisoner must demonstrate that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). That is, the plaintiff must show that he faced a sufficiently serious risk to his health or safety and that the defendant acted with "'deliberate indifference' to [his] health or safety." *See Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying the deliberate-indifference standard to conditions of confinement claims)). "Fundamentally, the concept underlying the Eighth Amendment is nothing less than the dignity of humankind." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 564, 568 (6th Cir. 2013) (internal quotations, omissions, and modifications omitted).

To support a claim of deliberate indifference under the Eight Amendment, a Plaintiff must satisfy two components–an objective component, and a subjective component. *Id.* (citing *Harrison v. Ash*, 538 F.3d 510, 518 (6th Cir. 2008)). "Satisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the

---

[1] While Plaintiff was not a "prisoner" at OGD, the Court held for purposes of Plaintiff's Motion to Amend that OGD's relationship with the State of Michigan, as alleged by Plaintiff, was a strong enough nexus to support a finding that OGD was a state actor. (*See* docket no. 31 at 5-6 (citing *See Brentwood Acad. v. Tenn. Secondary Athletic Ass'n*, 531 US 288 (2001)).) The Court noted that its finding was limited to its ruling on Plaintiff's Motion to Amend and that OGD could re-raise the issue at a later date. (*Id.* at 6 n.1.) OGD has not addressed this issue; therefore, for purposes of OGD's instant Motion, the undersigned has assumed that OGD is a state actor and that the Eighth Amendment applies to Plaintiff's claims.

defendant . . . acted with a sufficiently culpable state of mind.'" *Quigley v. Toung Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)).

### i. The Objective Component

Defendant acknowledges that Plaintiff was diagnosed with MRSA "days after leaving OGD's facility" and does not address the objective component of Plaintiff's deliberate-indifference claim. (*See* docket no. 35 at 10.) Defendant implies that Plaintiff's claim is based on allegedly deficient medical care and asserts that Plaintiff cannot show that Defendant acted with deliberate indifference or that there is a causal connection between OGD's deliberate indifference and Plaintiff's injuries. (*Id.*) But as Plaintiff notes in his Response, his claim does not stem from a failure to provide proper medical care, and therefore, the seriousness of Plaintiff's medical condition is not at issue. (*See* docket no. 36 at 5.) Instead, the objective component of Plaintiff's claims turns on whether "the conditions in his room were [sufficiently] dangerous and unsanitary" to give rise to a constitutional violation. (*See id.*) That is, Plaintiff's claim is a conditions-of-confinement claim, not a serious-medical-needs claim.

In a conditions-of-confinement context, the objective component of the deliberate-indifference inquiry is met when the plaintiff can show that the condition of confinement amounts to an "extreme deprivation." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir.2004). In such cases, "courts look to the evidence presented regarding the duration of exposure and totality of conditions contributing to the alleged deprivation." *Eidam v. Bailey*, No. 10-34, 2011 WL 3269625, *3 (W.D. Mich. July 29, 2011) (citing *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir.2006)). In *Watson v. Charles*, the U.S. District Court for the Western

7

District of Michigan compiled a series of cases that is assistive when addressing such a totality of conditions:

> . . . It is well recognized that exposure to unsanitary conditions may violate the Eighth Amendment's prohibition on subjecting inmates to an excessive risk of harm. *See Rhodes*, 452 U.S. at 347 (recognizing that minimal sanitation is required by the Eighth Amendment); *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (holding that regularly holding prisoners in extremely overcrowded conditions where they were exposed to infections diseases such as hepatitis, together with other conditions, presented a sufficiently serious risk to prisoner health to implicate the Eighth Amendment). Some courts also have recognized that forcing prisoners to be exposed to blood-borne contagious or infectious diseases may violate the Eighth Amendment. *See, e.g., Lee v. Birkett*, No. 09-cv-10723, 2010 WL 1131485, at *5 (E.D.Mich. Feb.18, 2010) (holding that allegations that prisoners were forced to use common razors and be exposed to other unsanitary conditions for two months could meet the objective component of the deliberate-indifference standard); *Coker v. Dallas County Jail*, No. 3:05-cv-5, 2007 WL 3022575, at *20 (N.D.Tex. Oct.17, 2007) (forcing prisoner to shower in an area covered with blood and excrement falls within prohibited Eighth Amendment conditions); *Randles v. Hester*, No. 98-cv-1214, 2001 WL 1667821, at *3 (M.D.Fla. June 27, 2001) (holding that the forcing a prisoner to clean up blood spills without furnishing him with protective clothing and equipment establishes the objective component of the Eighth Amendment).
>
> Ordinarily, however, allegations about temporary inconveniences do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir.2001) (holding that placement in a flooded cell without a working toilet failed to establish a constitutional violation); *see also Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir.1999) (stating that "deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment") (citing *Stephens v. Carter County Jail*, 816 F.2d 682 (6th Cir.1987)). In *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir.1998), the court concluded that a prisoner's exposure for three days to a filthy cell with "blood on the walls and excretion on the floors" was not cruel and unusual punishment. *Id.* (quoting *Hutto*, 437 U.S. at 686–87) (noting that "the length of confinement cannot be ignored. . . . A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months."). Similarly, in *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir.1996), the court held that a prisoner did not establish an Eighth Amendment violation based on allegations that he was exposed for four days to raw sewage from an overflowed toilet in his cell.

No. 10-231, 2011 WL 124649, *3-4 (W.D. Mich. Jan. 14, 2011).

Here, Plaintiff testified that the floors, walls, doors, and bed in his room were covered in grime and that the chair and the floor were sticky, like someone had spilled pop or beer on them. (Docket no. 35-1 at 9.) Plaintiff states, however, that he was able to clean his room with bleach the same evening that he arrived at OGD. (*Id.*) Thus, the cleanliness of Plaintiff's room, in itself, would be insufficient to establish the extreme conditions required to support a constitutional violation; being forced to spend a few hours cleaning a dirty room is not cruel and unusual punishment. Nevertheless, Plaintiff also alleges that the condition of the room exposed him to MRSA, a particularly contagious and antibiotic-resistant staph infection. *Cf Stoudemire v. Mich. Dept. Of Corr.*, 705 F.3d 560 (6th Cir. 2013) (discussing a conditions-of-confinement claim and noting that the MDOC requires "all prisoners with a documented culture positive for MRSA must be quarantined"). Thus, even considering the short period in which Plaintiff was forced to encounter the dirty conditions in his room, the undersigned finds that exposure to such an infectious disease would meet the objective component of the deliberate-indifference standard.

Defendant asserts, though, that "there is no causal connection between Plaintiff's MRSA diagnosis and the conditions at OGD's facility." (Docket no. 35 at 11.) Specifically, Defendant argues that "Plaintiff was diagnosed days after he left OGD's facility," and that this delayed diagnosis, "coupled with the lack of any MRSA cases at OGD, creates an inference that Plaintiff contracted his skin infection elsewhere." (*Id.*) But Plaintiff testified that he began experiencing symptoms of MRSA While he was still at OGD, regardless of when he received his official diagnosis. Moreover, "creating an inference" that Plaintiff contracted MRSA elsewhere is not the same as showing "an absence of evidence to support [Plaintiff's] case." To the contrary, when deciding a motion for summary judgment, all inferences must be drawn in Plaintiff's favor, and the

9

need to draw an inference implies a factual dispute. Therefore, the undersigned finds that there is a genuine issue of material fact regarding the objective component of Plaintiff's claim.

### ii. The Subjective Component

To satisfy the subjective component of a deliberate indifference claim and show that the defendant had a sufficiently culpable state of mind, a plaintiff must show that "'the official knows of and disregards' the substantial risk of serious harm." *Villegas*, 709 F.3d at 569 (quoting *Harrison*, 539 F.3d at 518). The plaintiff need not prove, however, "that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" *Comstock,* 273 F.3d at 703 (quoting *Farmer,* 511 U.S. at 835). Instead, a plaintiff must show that (1) the defendant "subjectively perceived facts from which to infer substantial risk to the [plaintiff]," (2) the defendant "did in fact draw that inference," and (3) the defendant "then disregarded that risk." *Quigley*, 707 F.3d at 681 (internal quotations omitted). Moreover, "[d]irect evidence about a defendant's knowledge is not necessary, but rather, the knowledge aspect of the subjective component can be determined ["in the usual ways, including inference from circumstantial evidence" *Quigley*, 707 F.3d at 682]." *Villegas*, 709 F.3d at 569. For example, "a factfinder may conclude that [the defendant] official knew of a substantial risk from the very fact that the risk was obvious." *Quigley*, 707 F.3d at 682; *see also Villegas*, 709 F.3d at 569.

Here, Plaintiff falls short of showing that Defendant's actions are constitutionally deficient. As Defendant notes, OGD has never received a report (other than Plaintiff's) that any resident at OGD has contracted MRSA while at OGD's facility. (*See* docket no. 35 at 10.) Thus, even drawing inferences from circumstantial evidence and viewing those inference in Plaintiff's favor, he cannot show that there were any facts from which Defendant could perceive any risk to Plaintiff of

contracting MRSA, let alone that Defendant actually perceived such a risk or disregarded it. Indeed, rather than point any evidence in support of his claims, Plaintiff asserts that "Plaintiff's own testimony will be the vehicle used" to support his claims, and he makes the conclusory assertion that "these conditions were obviously known to [Defendant] because they would be in open view." (Docket no. 36 at 4-5.)

Defendant has shown that there is an absence of evidence to support Plaintiff's contention that Defendant was aware of any risk that Plaintiff could contract MRSA. And in rebuttal, Plaintiff has provided nothing more than speculation and his own conclusions; at most, Plaintiff can show that Defendant was aware that Plaintiff's room was dirty. But such a showing does not support Plaintiff's claim of deliberate indifference. Therefore, Plaintiff cannot meet the subjective element of his deliberate-indifference claim, and Defendant's Motion for Summary Judgment should be granted.

### D. Conclusion

For the reasons stated herein, the undersigned recommends GRANTING Defendants' Motion for Summary Judgment [35] and further recommends dismissing this matter in its entirety.

### III. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will

not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: June 30, 2014                     s/ Mona K. Majzoub
                                         MONA K. MAJZOUB
                                         UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 30, 2014                     s/ Lisa C. Bartlett
                                         Case Manager